FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

RECEIVED - CLERK
S. DISTRICT COURT
EASTERN DISTRICT
OF TEXAS

UNITED STATES DISTRICT COURT
OF EASTERN DISTRICT OF TEXAS
TYLER DIVISION

MAY 1 5 2003

DAVID J. MALAND, CLERK

BY
DEPUTY

IN RE ELECTRONIC DATA SYSTEMS  :
CORPORATION "ERISA" LITIGATION  :
                                :     CASE NO. 6:03-MD-1512
                                :     LEAD CASE 6:03-CV-126
THIS DOCUMENT RELATES TO:       :     ("ERISA")
ALL CASES                       :
                                :     JURY TRIAL DEMANDED

---

### FIRST AMENDED CLASS ACTION COMPLAINT

For their Complaint against Defendants, Plaintiffs Jeffrey Smith and Douglas B. Vanderlip allege as follows:

### NATURE OF THE ACTION

1.     This is a civil enforcement action brought pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and pursuant to Section 12(a)(1) of the Securities Act of 1933, as amended (the "Securities Act"), 15 U.S.C. § 77l(a)(1).

2.     This lawsuit concerns the EDS 401(k) Plan (the "Plan"), a retirement plan established by Electronic Data Systems Corporation ("EDS" or the "Company") as a benefit for its employees to permit tax-advantaged savings for retirement and other long-term goals. The Plan is a defined contribution plan covering eligible employees of the Company. An employee becomes eligible to participate in the Plan upon the commencement of service with the employer.

3.     Plaintiffs sue William H. Gray, III, Ray J. Groves, and C. Robert Kidder, who are members of the Company's Compensation and Benefits Committee; the Company; John Does, the individual members of the Company's committee charged with Plan administration during the Class Period, whose identities are currently not known; and Richard Roes 1-30, the

CLASS ACTION COMPLAINT
Page 1

N:\CLIENTS\07000\17\ERISAFRAUD\EDS\PLEADINGS\COMPLAINT.FINAL.DOC

individual members of the Company's Board of Directors who participated in the Plan's investment policies during the Class Period, whose identities are currently not known.

4.    Plaintiff Jeffrey Smith, was an employee of EDS during the Class Period and a participant in the Plan. Plaintiff Douglas Vanderlip was an employee of EDS during the Class Period through June, 2002, and a participant in the Plan. Plaintiffs allege that Defendants are fiduciaries of the Plan, and breached their fiduciary duties to him and to the other participants and beneficiaries of the Plan, in violation of ERISA Section 409, 29 U.S.C. § 1109, in connection with the Plan's holdings of EDS stock. Plaintiffs allege that Defendants are obliged under ERISA to make the Plan whole for the losses suffered as a result of Defendants' failure to discharge their fiduciary obligations.

5.    Because their claims apply to the Plan participants and beneficiaries as a whole, and because ERISA authorizes Plan participants such as Mr. Smith and Mr. Vanderlip to sue for plan-wide relief for breaches of fiduciary duty, they brings this action on behalf of themselves and all the Plan participants and beneficiaries during the Class Period.

6.    Plaintiffs also allege that during the Class Period, EDS issued to the Plan EDS stock without registration thereof in violation of Section 5 of the Securities Act, 15 U.S.C. § 77e(a)(2). Pursuant to Section 12(a)(1) of the Securities Act, Plaintiffs seek rescission of all purchases of such unregistered stock made by the Plan or otherwise for the benefit of Plan participants or beneficiaries.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), ERISA Section 502(e)(1), 29 U.S.C. §1132(e)(1), and Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).

8.    Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and some Defendants reside or may

CLASS ACTION COMPLAINT
Page 2

be found in this district. Venue is also proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).

## PARTIES

### Plaintiffs

9.      Plaintiff Jeffrey Smith is a resident of the State of Washington and was at all relevant times and is a Participant in the Plan within the meaning of ERISA §3(7), 29 U.S.C. § 1002(7).

10.     Plaintiff Jeffrey Smith is a resident of the State of Arizona and was at all relevant times through June 21, 2002 a Participant in the Plan within the meaning of ERISA §3(7), 29 U.S.C. § 1002(7).

### Defendants

11.     Defendant EDS is organized under the laws of Delaware and maintains its principal executive offices at 5400 Legacy Drive, Plano Texas.

12.     Defendant William H. Gray, III, was, at times relevant to this complaint, a member of the Company's Board of Directors. Defendant Gray was also, throughout the Class Period, a member of the Company's Compensation and Benefits Committee.

13.     Defendant Ray J. Groves was, at times relevant to this complaint, a member of the Company's Board of Directors. Defendant Groves was also, throughout the Class Period, a member of the Company's Compensation and Benefits Committee.

14.     Defendant C. Robert Kidder was, at times relevant to this complaint, a member of the Company's Board of Directors. Defendant Kidder was also, throughout the Class Period, a member of the Company's Compensation and Benefits Committee.

15.     Defendants John Does 1-30 are residents of the United States and are or were members of the Company's Compensation and Benefits Committee or other committee charged with administration of the Plan during the Class Period. Their identities are presently unknown

CLASS ACTION COMPLAINT
Page 3

to Plaintiffs. Once their identities are discovered, Plaintiffs will seek leave to amend or join them under their true names.

16.     Defendants Richard Roes 1-30 are residents of the United States and are or were the individual members of the Company's Board of Directors who participated in the Plan's investment policies during the Class Period, whose identities are currently not known by Plaintiffs. Once their identities are discovered, Plaintiffs will seek leave to amend or join them under their true names.

## CLASS ACTION ALLEGATIONS

17.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class (the "Class") of all persons who are or were participants in or beneficiaries of the Plan at any time between September 7, 1999 and the present (the "Class Period"). With respect to the claims asserted herein for rescission under Section 12(a)(1) of the Securities Act, Plaintiffs bring this action on behalf of a subclass (the "Rescission Subclass"), namely those members of the Class for whose Plan accounts EDS stock was purchased during the period October 20, 2001 through November 18, 2002 (the "Rescission Class Period"). Excluded from the Class are EDS' officers and directors and any fiduciaries during the Class Period, including members of their immediate families and their legal representatives, heirs, successors, or assigns.

18.     Plaintiffs meet the prerequisites to bring this action on behalf of the Class and the Rescission Subclass because:

> •     **Numerosity.** The Class and the Rescission Subclass each consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

- **Commonality.** There are questions of law and fact common to the Class and the Rescission Subclass. Among the questions of law and fact common to the Class are:

  a.    whether Defendants were fiduciaries;

  b.    whether Defendants breached their fiduciary duties;

  c.    whether the Plan and the Participants were injured by such breaches;

  d.    whether the Class is entitled to damages and injunctive relief; and

  e.    whether members of the Rescission Subclass are entitled to rescind the subject purchases of EDS stock

- **Typicality.** Plaintiffs' claims are typical of the claims of the Class and the Rescission Subclass.

- **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class and the Rescission Subclass.  They has no interests that are antagonistic to or in conflict with the interests of the Class or the Rescission Subclass as a whole, and they have engaged competent counsel, highly experienced in ERISA class actions concerning employer securities in 401(k) plans, as well as in securities and other class and complex litigation, to ensure protection of the interests of the Class as a whole.

19.    As an ERISA breach of fiduciary duty action for plan-wide relief, this is a classic Rule 23(b)(1)(B) class action.  The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  However, this action is also maintainable as a class action under the other subsections of Rule 23(b):

CLASS ACTION COMPLAINT
Page 5

- **Rule 23(b)(1)(A).** The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants.

- **Rule 23(b)(2).** The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

- **Rule 23(b)(3).** Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

20.     There are one or more putative or certified class action securities cases pending against EDS and its officers and/or directors. The claims herein are brought under ERISA and the Securities Act and related principles of federal common law and are different from those being asserted by the plaintiffs in those other class actions. The named plaintiffs in those class actions do not adequately represent the Plaintiffs or the Class herein with respect to ERISA claims or the Securities Act claims asserted herein and may be subject to defenses and limitations of liability under the PSLRA and other statutes and rules that do not apply to the claims asserted herein.

21.     Under and as required by ERISA, Defendants carry insurance for claims asserted herein that may not be available to the Defendants in the securities class actions.

22.     There are people in this Class who are not members of the classes or putative classes in the securities class action cases.

23.     There are Defendants in this case who are not Defendants in the securities class actions.

CLASS ACTION COMPLAINT
Page 6

## THE PLAN

24.     The Plan is an employee benefit Plan within the meaning of ERISA Sections 3(3) and 3(2)(A), 29 U.S.C. §§1002(3) and 1002(2)(A).

25.     The Plan is a "defined contribution" or "individual account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. §1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's accounts.

26.     The Plan provides a number of different options for investment of the Plan's assets, including the EDS Stock Fund, which consists of EDS common stock. On information and belief, EDS stock was represented as a suitable investment for the Plan.

27.     The Plan provides that EDS will make matching contributions in EDS stock in an amount equal to 25% an employee's contribution up to 6% of an employee's salary.

28.     Participants direct the Plan to purchase investments from among the investment options available in the Plan and allocate them to their individual accounts.

29.     EDS is the Plan Sponsor within the meaning of ERISA § 3(16)(B), 29 US.C. § 1002(16)(B).

30.     EDS is the administrator of the Plan within the meaning of ERISA §3 (16)(A), 29 U.S.C. § 1002(16)(A). EDS has responsibility and control over management of Plan assets.

31.     The Company maintains a Compensation and Benefits Committee (the "Committee"). According to the Company's Proxy Statements, the Committee met several times each year during the Class Period, and is charged with responsibility for establishing executive officer compensation, reviewing recommendations made by the Chief Executive Officer with respect to the long-term incentive compensation of other corporate officers, overseeing the Company's employee benefit Plans, reviewing new employee benefit plans and significant amendments to existing plans, and administering all stock-based plans.

CLASS ACTION COMPLAINT
Page 7

32.     At all times relevant to this Complaint, Defendants were fiduciaries of the Plan as defined by ERISA §3(21)(A), 29 U.S.C. §1002(21)(A), because they exercised discretionary authority or control respecting management of the Plan or exercised discretionary authority or control respecting management or disposition of assets and had discretionary authority or responsibility in the administration of the Plan, and because they made representations to Participants for the purpose of affecting Participant decisions with respect to the Plan.

33.     Each Defendant is liable for the breaches of fiduciary duty of the other Defendants under ERISA §405, 29 U.S.C. §1105.

## PLAN ADMINISTRATION

34.     Defendants, as fiduciaries of the Plan, are required under ERISA to furnish certain information to Participants. For example, ERISA §101, 29 US.C. §1021, requires the Plan's administrator to furnish a Summary Plan Description to Participants. ERISA §102, 29 U.S.C.§ 1022, provides that a Summary Plan Description must apprise Participants of their rights and obligations under the Plan.

35.     Defendants had the discretion to establish and change the investment alternatives among which Plan participants could direct the investment of the Plan's assets allocated to their accounts.

36.     Defendants had a duty to review the Plan's investment policy and the selection and the performance of investment alternatives offered under the Plan. On information and belief, there was no requirement that any Plan assets contributed by Participants or the proceeds thereof be invested in Company stock or that Company stock be continued as an investment alternative, either for new funds (resulting from new contributions or the re-allocation of existing funds in individual accounts) or existing individual account balances.

37.     The Plan's Administrator had the duty and responsibility to distribute to Plan participants information explaining the Plan.

38.     Defendants had a duty to obtain from the Company information necessary for the proper administration of the Plan.

## SUBSTANTIVE ALLEGATIONS

39.     As required by ERISA, Defendants issued Summary Plan Descriptions which, upon information and belief, expressly incorporated by reference during the Class Period all of the documents filed by EDS with the SEC under the Federal Securities Laws. These filings were signed by EDS and were either signed by or approved by the Director Defendants. These filings contained the following materially false and misleading information concerning EDS' financial results and operations, which the Defendants knew or should have known was false.

40.     The Company described its business in its Annual Report for the year ended 2001 on Form 10-K filed with the SEC on March 6, 2002 (the "2001 Form 10-K"):

> Electronic Data Systems Corporation is a professional services firm that offers its clients a portfolio of related services worldwide within the broad categories of traditional information technology ("IT") outsourcing, business process outsourcing, solutions consulting, management consulting, and product lifecycle management software and services. Services include the management of computers, networks, information systems, information processing facilities, business operations and related personnel.

41.     The largest component of EDS' business was its Information Solutions business. According to the 2001 Form 10-K,

> Information Solutions, our largest line of business, encompasses our traditional IT outsourcing business. Information Solutions includes network and system operations, data management, applications development and maintenance, desktop management and field services, as well as Internet hosting and Web site management. Our capabilities help clients align IT and operations with business strategy while ensuring predictable performance and costs.
>
> *     *     *
>
> Our Information Solutions line of business accounted for $16.2 billion of our revenues in 2001 [or approximately 75 % of 2001 total revenue of $21.5 billion].

CLASS ACTION COMPLAINT
Page 9

42. EDS' revenues were governed in large part by the terms of its client contracts, described by EDS 2001 as follows:

> Our fees are generally paid pursuant to contracts with our clients. These contracts may provide for both fixed and variable fee arrangements. The terms of our client contracts generally range from less than one year in the high-value management consulting business to up to 10 years in our IT outsourcing business. Other than GM, no one client accounted for more than 10 percent of our total revenues in any of the past three years. Approximately 43 percent of our 2001 revenues were generated outside the United States.

2001 Form 10-K.

43. EDS described its revenue recognition policy under service contracts as follows:

> We provide services under time-and-material, unit-price, or fixed-price contracts which generally extend up to 10 years. Under time-and-material and certain unit-price and fixed-price contracts under which costs are generally incurred in proportion with contracted billing schedules, revenue is recognized when the customer may be billed. Such method is expected to result in reasonably consistent profit margins over the contract term. For certain unit-price and fixed-price contracts, we follow the guidance contained in AICPA Statement of Position ("SOP") 81-1, Accounting for Performance of Construction-Type and Certain Production-Type Contracts. SOP 81-1 requires the use of percentage -of-completion accounting for long-term contracts that contain enforceable rights regarding services to be provided and received by the contracting parties, consideration to be exchanged, and the manner and terms of settlement, assuming reasonably dependable estimates of revenue and expenses can be made. The percentage-of-completion methodology generally results in the recognition of reasonably consistent profit margins over the life of a contract. Amounts recognized in revenue are calculated using the percentage of services completed, on a current cumulative cost to total cost basis. Cumulative revenues recognized may be less or greater than cumulative costs and profits billed at any point in time during a contract's term. The resulting difference is recognized as unbilled or deferred revenue.
>
> Any estimation process, including that used in preparing contract accounting models, involves inherent risk. We reduce the inherent risk relating to revenue and cost estimates in percentage-of-completion models through corporate policy, approval and monitoring processes. Risks relating to service delivery, usage, productivity and other factors are

> considered in the estimation process. If sufficient risk exists, a zero-profit methodology is applied to a specific client contract's percentage-of-completion model whereby the amount of revenue recognized is limited to the amount of costs incurred until such time as the risks have been partially or wholly mitigated through performance. This methodology is primarily used at the inception of our largest outsourcing contracts where the amount of profit to be recognized on a contract over its term is not yet determinable. Our estimates of revenues and expenses on client contracts change periodically in the normal course of business, occasionally due to modifications of our contractual arrangements. In addition, the implementation of cost saving initiatives and achievement productivity gains generally.

2001 Form 10-K.

44.     In July, 2001, EDS acquired the IT outsourcing business of Sabre Holdings Corporation, along with a 10-year, $2.2 billion service contract to EDS to manage Sabre's IT systems, which included the IT business of American Airlines and US Airways. The Company described the acquisition, in its 2001 Form 10-K, as follows:

> On July 2, 2001, the Company acquired the airline infrastructure outsourcing business and internal IT infrastructure assets of Sabre Holdings Corporation ("Sabre") for $676 million in cash. Sabre's airline infrastructure outsourcing business includes contracts with American Airlines, US Airways and other airline and transportation industry clients. The acquisition makes the Company the leading provider of global IT infrastructure services to the airline industry and expands the Company's presence in strategic infrastructure outsourcing.

45.     EDS did not disclose, however, its vulnerability to drops in discretionary spending by customers, including the airline business acquired through the Sabre transaction, and instead implied that such exposure was limited to an anticipated drop in discretionary spending by one of its largest clients, General Motors.

46.     EDS' 2001 Form 10-K touted its IT outsourcing success, as measured by the size of the contracts achieved:

> Since January 1, 1995, we have signed new service contracts having a total contract revenue value of $135 billion over their terms.

CLASS ACTION COMPLAINT
Page 11

On information and belief, included in this figure was the anticipated contract revenues from the Sabre acquisition.

47.    On August 11, 2002, U.S. Airways filed for bankruptcy.  In response to the U.S. Airways bankruptcy filing, on August 12, 2002, EDS issued a press release, which stated in part:

> PLANO, Texas -- EDS today outlined its relationship with US Airways in light of the airline's bankruptcy filing Sunday.
>
> EDS and US Airways are parties to a long-term agreement under which EDS provides IT services to US Airways. EDS acquired the contract as part of its acquisition of Sabre Inc.'s IT outsourcing business in July 2001.
>
> Under terms of the contract, EDS is paid approximately $200 million annually. At the time of US Airways' bankruptcy filing, EDS had outstanding approximately $70 million in invoiced work and work in progress. Including these assets, contract fixed assets and intangibles, the total balance sheet exposure is approximately $140 million. This amount includes approximately $25 million, net of taxes, related to aircraft leases which pre-dated the services contract.
>
> EDS and US Airways have been in discussions for some time concerning a restructuring of their agreement. EDS expects these discussions to continue post-bankruptcy. EDS also expects to continue to provide services to US Airways post-bankruptcy and to be paid for those services. EDS does not expect the restructuring of the IT services agreement, if any, to be material to its results of operations or financial position.

48.    EDS had not previously disclosed that its airline infrastructure outsourcing assets were subject to a drastic decrease in value if one of its airline customers filed for bankruptcy.

49.    Ultimately, on September 18, 2002, the Company issued the following press release, which was also filed with the SEC on September 18, 2002, in a Form 8-K:

> PLANO, Texas - EDS today announced, based on preliminary estimates, it expects revenues and earnings for its third quarter of 2002 to be lower than previous company guidance.
>
> Reflecting continuing softness in the information technology services sector, the company now expects to report total revenue of approximately $5.3-$5.5 billion, down 2-5 percent from the $5.6 billion reported a year ago. EDS had expected total revenue to increase 4-6 percent in the quarter.

As a result of lower revenues, increased new business pursuit costs and other factors outlined below, the company expects to report earnings per share of 12-15 cents for the quarter ending September 30, 2002. The company had previously estimated earnings per share of 74 cents a share for the third quarter.

The lower than expected contract revenue growth is due to reduced discretionary spending on existing contracts as well as fewer new sales. These factors, combined with a decision to increase investment in sales pursuits and processes to leverage an increased business pipeline, accounted for approximately 25-28 cents of the lowered earnings per share estimate.

Other factors accounting for the remainder of the lowered earnings estimate were:

Recognition of asset writedowns associated with the US Airways bankruptcy in August;

Financial performance of certain contracts primarily in Europe; and

Asset impairments resulting primarily from EDS' decision to exit the subscription fulfillment business.

These additional factors are expected to result in further reductions to earnings per share of 14, 14 and 8 cents, respectively.

\*      \*      \*

"I am deeply disappointed with our results for the quarter. The unexpected severity of the global slowdown in corporate spending, especially in the past two months, far exceeded our expectations. This combined with the US Airways bankruptcy and the adverse financial performance of certain European contracts impacted our results," said Dick Brown, EDS Chairman and CEO. "We remain confident in EDS' and the sector's long-term outlook. We continue to strengthen our organization and sign significant new business."

50.     On September 19, 2002, EDS' stock price plummeted over 50% to close at $17.20, wiping out some $8 billion in market value, including significant Plan value for shares held by Plan participants and beneficiaries in the EDS Stock Fund.

51.     During the Class Period, Defendants failed to disclose that EDS' Information Solutions IT outsourcing revenue was highly susceptible to interruption due to terms in EDS'

CLASS ACTION COMPLAINT
Page 13

service contracts that enabled EDS customers to unilaterally suspend discretionary spending on IT outsourcing.

52.    Defendants failed to disclose the risk that EDS's airline infrastructure outsourcing assets that it acquired in the Sabre acquisition were subject to a drastic decrease in value if an airline, such as U S. Airways, declared bankruptcy.

53.    Through the Summary Plan Descriptions that incorporated by reference materially misleading SEC filings, Defendants, when engaged in the fiduciary function of communicating with Plan Participants, materially misled Plan Participants with respect to the merits of investment in EDS stock

54.    As fiduciaries, Defendants were responsible to monitor on an on-going basis the prudence of the Plan's investments and investment alternatives.   Had Defendants reasonably discharged these obligations, they would have discovered that continued investment in EDS stock and the continued offering of EDS stock as a Plan investment alternative were imprudent because of the volatility of EDS stock and the Company's vulnerability to circumstances such as the US Airways bankruptcy or other circumstances causing customers to interrupt or terminate their IT service contracts.

55.    General  Motors Corporation ("GM") filed a Registration Statement on Form S-8 in August, 1990 covering (a) 4,000,000 shares of GM Class E Stock and (b) an indeterminate number of plan interests to be issued in connection with the Plan.  The shares of GM Class E Stock covered by this registration statement were subsequently adjusted to 8,000,000 as a result of a two-for-one stock split.

56.    GM filed a second Registration Statement on Form S-8 in December 1995 covering (a) an additional 2,000,000 shares of GM Class E Stock and (b) an indeterminate number of plan interests to be issued in connection with the Plan.

57.    EDS split off from GM in June 1996.  At that time, shares of GM Class E Stock were canceled and converted into shares of EDS common stock.  The Registration Statements on

CLASS ACTION COMPLAINT
Page 14

Form S-8 related to the GM Class E Stock were amended to become registration statements of EDS with respect to EDS common stock offered under the Plan. EDS filed no new Registration Statements on Form S-8 during the period June 1996 through November 18, 2002. On November 18, 2002, EDS filed a Registration Statement on Form S- 8 covering (a) a 12,000,000 shares EDS common stock and (b) an indeterminate number of plan interests to be issued in connection with the Plan.

58. During the period June 1996 through November 18, 2002, EDS issued to the Plan shares of EDS common stock which were not covered by a Registration Statement on Form S-8 and which were not exempt from the registration requirements of the Securities Act.

59. Effective December 20, 2002, EDS, the Plan and fiduciaries of the Plan entered into a Tolling and Standstill Agreement (the "Tolling Agreement") to provide a period of time during which parties could investigate the issue of unregistered stock issuances and during which commencement or prosecution of claims with respect thereto would be forborne. Such agreement provided for the tolling of all defenses based or partially based on the passage of time or on a conditioning of rights based on the time of assertion, knowledge or notice, including all statutes of limitations and statutes of repose and time related equitable defenses including laches.

## DEFENDANTS' FIDUCIARY BREACHES
### COUNT ONE:
### PROVIDING MATERIALLY MISLEADING INFORMATION

60. Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

61. ERISA Section 404(a)(1)(A) imposes on a plan fiduciary a duty of loyalty – that is, a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and...for the exclusive purpose of...providing benefits to participants and its beneficiaries. . . ." 29 U.S.C. § 1104(a)(1)(A).

CLASS ACTION COMPLAINT
Page 15

62.     ERISA Section 404(a)(1)(B) imposes on a plan fiduciary a duty of prudence –
that is, a duty to "discharge his duties with respect to a plan solely in the interest of the
participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such
matters would use in the conduct of an enterprise of a like character and with like aims. . . ." 29
U.S.C. § 1104(a)(1)(B)

63.     A plan fiduciary's duties of loyalty and prudence include a duty to disclose and
inform. This duty entails:  (1) a duty not to misinform; (2) an affirmative duty to inform when
the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey
complete and accurate information material to the circumstances of participants and
beneficiaries. This duty to disclose and inform recognizes the disparity that may exist, and in
this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and
the participants and the beneficiaries, on the other. In a plan with various funds available for
investment, this duty to inform and disclose also includes:  (1) the duty to impart to plan
participants material information of which the fiduciary has or should have knowledge that is
sufficient to apprise the average plan participant of the risks associated with investing in any
particular fund; and (2) the duty not to make material representations.

64.     By no later than the commencement of the Class Period, Defendants breached
their fiduciary duties to disclose and inform with respect to the Plan's use of employer stock as a
Plan investment.  Rather than providing complete and accurate information to the Plan's
participants and beneficiaries regarding the risks of investing in company stock in the Plan,
Defendants did the opposite. They withheld and concealed material information during the Class
Period and before, and instead actively misled the participants and beneficiaries of the Plan about
the appropriateness of investing in Company stock and about Defendants' earnings prospects and
business condition, thereby encouraging participants of the Plan to continue to make and to
maintain substantial investments in Company stock in the Plan.

CLASS ACTION COMPLAINT
Page 16

## COUNT TWO:

## BREACH OF DUTY TO MONITOR AND ELIMINATE INAPPROPRIATE INVESTMENTS AND INVESTMENT ALTERNATIVES

65.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

66.     Under the terms of the Plan, the Defendants had the authority to add and eliminate investment alternatives under the Plan.

67.     Defendants either knew or in the reasonable exercise of their fiduciary duties should have known facts relevant to the prudence of Plan investment in EDS stock and the continued offering of EDS stock as a Plan investment alternative.

68.     A fiduciary's duties of loyalty and prudence also entail a duty to conduct independent investigation into, and continually to monitor, the merits of all the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan. Defendants breached this duty of investigation and monitoring with respect to EDS stock. By no later than the beginning of the Class Period, these Defendants could not have reasonably made a determination that Company stock was a suitable investment for the Plan, either for a participant's discretionary account or for the match. In fact, by the beginning of the Class Period, if not before, Company stock was plainly an unsuitable investment option for the Plan because it was unduly risky and subject to external circumstances, such as the U.S. Airways bankruptcy, that could (and did) have a catastrophic effect on the value of Company stock.

69.     Had Defendants discharged their fiduciary obligations to monitor the Plan's investment in EDS stock, they would have concluded that continued investment and offering of EDS stock as a Plan investment alternative was imprudent and that divestment and the termination of EDS stock as an investment alternative were necessary. The Defendants' failure to make this determination in a timely fashion and act upon it appropriately, caused the Plan to lose millions of dollars, which loss is reflected in decrease account balances of Participants.

CLASS ACTION COMPLAINT
Page 17

## COUNT THREE:

## BREACH OF DUTY TO AVOID CONFLICTS OF INTEREST

70.　Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

71.　The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

72.　Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occur by continuing to allow Company stock as a Plan investment during the Class Period, by continuing to participate in various Company compensation programs that created a substantial personal interest in certain Defendants or other Company executives to maintain a high public price for EDS stock, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock and the information provided to participants and beneficiaries concerning it, and generally by failing to take whatever steps were necessary to ensure that the Plan fiduciaries did not suffer from a conflict of interest.

## COUNT FOUR:

## BREACH OF FIDUCIARY DUTY UNDER SECTIONS 406 AND 407

73.　Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

74.　Defendants, in connection with their actions and omissions in authorizing or causing the Plan to continue to offer the Company stock as an investment option, permitted Plan participants to invest in EDS stock at a time when they knew or should have known that EDS' revenues were materially inflated and that, as a result, the price per share at which the Plan was acquiring EDS stock exceeded fair market value and was more than adequate consideration for such shares. Thus, Defendants caused the Plan to engage in transactions that Defendants knew or should have known constituted a direct or indirect acquisition of EDS shares of EDS stock in

CLASS ACTION COMPLAINT
Page 18

violation of ERISA Sections 406(a)(1)(E) and 407(a), 29 U.S.C. §§ 1106(a)(1)(E) and 1107(a). Because the price at which Defendants caused the Plan to accept and/or acquire such shares exceeded fair market value and was more than adequate consideration, the prohibited transactions are not exempt under the provisions of ERISA Section 408(e)(1), 29 U.S.C. § 1108(e)(1).

**COUNT FIVE:**

**BREACH OF CO-FIDUCIARY DUTY UNDER SECTION 405**

75.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

76.     Section 405(a) of ERISA, 29 U.S.C. § 1105 provides as follows:

(a)     **Circumstances Giving to Liability** – In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)     If, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     If he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

77.     By the conduct set forth above each of the Defendants has knowingly participated in the breaches of their co-fiduciaries, failed to fulfill their own fiduciary responsibilities as set

forth in Section 404 of ERISA so as to enable the breaches of their co-fiduciaries, and failed to take reasonable steps to correct the breaches of their co-fiduciaries of which they had knowledge.

**COUNT SIX:**

**KNOWING PARTICIPATION IN A BREACH OF FIDUCIARY DUTY**

78.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

79.     To the extent that any of the Defendants named herein are found not to have been fiduciaries or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, each such Defendant has knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such a breach.

**CLAIM FOR RESCISSION**

80.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

81.     This claim is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act.

82.     During the Rescission Class Period, EDS, directly or indirectly, singly or in concert with others, offered to sell, sold, and delivered after the sale, for the benefit of Plan participants and beneficiaries, unregistered EDS stock and, directly and indirectly, (a) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell such securities, through the use of written contracts, offering documents and otherwise, (b) carried and caused to be carried through the mails and in interstate commerce by the means and instruments of transportation such securities for the purpose of sale and for delivery after sale, and (c) made use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

83.     No registration statement was in effect during the Rescission Class Period with respect to the offer and sale of any securities described in the foregoing paragraph.

84.     At the time the Tolling Agreement was entered into, less than three years had elapsed from the time that the securities upon which this claim is brought were sold to the public

CLASS ACTION COMPLAINT
Page 20

and less than one year had elapsed from the time when plaintiffs discovered or reasonably could have discovered the facts upon which this claim is based. Pursuant to the Tolling Agreement, the passage of time from the date of the Tolling Agreement through the filing of this Complaint doe not give rise to any defense or otherwise prejudice Plaintiffs' rights with respect to this claim.

85. By reason of the foregoing, EDS has violated Section 5 of the Securities Act, 15 U.S.C. §77e, and Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1).

86. Accordingly, all members of the Rescission Subclass have the right to rescind and recover the consideration paid for the EDS stock purchased for their Plan accounts during the Rescission Class Period, less any income derived thereon or recover damages in an amount to be proved at trial for any such EDS stock no longer held in such person's Plan account.

## JURY TRIAL DEMAND

87. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

In view of all of this, Plaintiffs and the Class are entitled to relief from Defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA § 409(a) (29 U.S.C. § 1109(a)); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2)&(3) (29 U.S.C. §§ 1109(a) and 1132(a)(2)&(3)); (3) rescission and rescissory damages as provided for in Section 12(a) of the Securities Act; (4) reasonable attorney fees and expenses as provided by ERISA § 502(g) (29 U.S.C. § 1132(g)), the common fund doctrine, and other applicable law; (5) taxable costs; and (6) interest on these amounts as provided by law; and (7) such other legal or equitable relief as may be just and proper.

DATED this 15th day of May, 2003.

Respectfully submitted,

SUSMAN, GODFREY L.L.P.

Barry C. Barnett
State Bar No. 01778700
901 Main Street, Suite 4100
Dallas, Texas  75202-3775
Telephone: 214-754-1900
Facsimile:  214-754-1933

KELLER ROHRBACK L.L.P.
Lynn L. Sarko
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

KELLER ROHRBACK P.L.C.
Ron Kilgard
Gary Gotto
National Bank Plaza
3101 N. Central Ave., Suite 900
Phoenix, AZ  85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

**Attorneys for Plaintiffs**

CLASS ACTION COMPLAINT
Page 22

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on

counsel of record via first class mail, on this 15th day of May, 2003, addressed as follow:


**Attorneys for Defendants:**
Robert Rachal
Howard Shapiro
Shook Hardy & Bacon, L.L.P.
LL&E Tower
909 Poydras, Suite 1100
New Orleans, LA 70112-4017

**Attorneys for Larry Florer:**
Brian P. Sanford
Sheils Winnubst Sanford & Bethune
1701 N. Collins Blvd., Suite 1100
Richardson, Texas 75080

Andrew M. Schatz
Robert A. Izard
Schatz & Nobel
330 Main St.
Hartford, CT 06106

Barry C. Barnett